Granovsky & Sundaresh PLLC
Benjamin Rudolph Delson (BD-1724)
Alexander Granovsky (AG-6962)
48 Wall Street / New York, NY 10005
delson@g-s-law.com / ag@g-s-law.com
(646) 524-6001

*Attorneys for Plaintiff Jerome Peter Geoffroy*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEROME PETER GEOFFROY,<br><br>*Plaintiff,*<br><br>v.<br><br>836 CROWN LLC,<br><br>*Defendant.* | No. _____<br><br>**COMPLAINT and JURY DEMAND** |

Plaintiff Jerome Peter Geoffroy, by his attorneys, Granovsky & Sundaresh PLLC, as and for his Complaint against Defendant 836 Crown LLC, alleges as follows:

## NATURE OF ACTION

1. Plaintiff Jerome Peter Geoffroy was the longtime superintendent of a 59-unit apartment building at 836 Crown Street in Brooklyn.

2. The building is owned and operated by Defendant 836 Crown LLC, which is controlled by the Neiss family, a major owner of residential real estate in Brooklyn.

3. For years, Defendant failed to pay Plaintiff the federal minimum wage, or the New York State minimum wage.

1

4. Plaintiff brings this lawsuit under the Fair Labor Standards Act, as amended (the "FLSA"), 29 U.S.C. § 201 et. seq., and under the New York Labor Law, Art. 6, §§ 190 et. seq., and Art. 19, §§ 650 et. seq., and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142 (collectively, "NYLL"), for Defendant's failure to pay wages (including overtime wages), for Defendant's failure to reimburse expenses, for Defendant's failure to provide wage notices and wage statements, and for wrongful and retaliatory discharge in violation of the FLSA and NYLL.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §§ 1331, 1367, and 2201.

6. This Court has subject matter jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this District.

## PARTIES

**Defendant**

8. Defendant 836 CROWN LLC ("Defendant") is a New York Limited Liability Corporation with offices located at 3417 Avenue J, Brooklyn, NY 11213 and 1860 Flatbush Avenue, Brooklyn NY 11210.

9. Defendant owns and operates a residential building located at 836 Crown Street in Brooklyn, New York.

10. Upon information and belief, Defendant is part of a family of entities (the "Neiss Organization") ultimately controlled by Charles Neiss and the Neiss family, who own and operate a portfolio of residential real estate in Brooklyn, including through their company Neiss Management Corp., also located at 1860 Flatbush Avenue in Brooklyn.

11. Upon information and belief, at all times relevant to this Complaint, Defendant's annual gross volume of sales made or business done was not less than $500,000.00.

12. At all times relevant to this Complaint, Defendant was an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

13. At all times relevant to this Complaint, Defendant used goods produced in interstate commerce.

14. Defendant caused the violations set forth in this Complaint.

**Plaintiff**

15. Plaintiff JEROME PETER GEOFFROY ("Geoffroy") is an individual residing in Queens, New York.

16. At all relevant times, the work performed by Geoffroy was to the benefit of the business operated by Defendant.

17. At all relevant times, Geoffroy was Defendant's "employee" within the meaning of the FLSA, and worked in interstate commerce as to fall within the protections of the FLSA.

## STATEMENT OF FACTS

*Geoffroy's Employment*

18. For approximately twenty years, Geoffroy served as the superintendent at 836 Crown Street ("the Building") in Brooklyn.

19. The Building is owned and operated by Defendant. Defendant was Geoffroy's employer at all times relevant to this Complaint, up until Defendant terminated Geoffroy in January 2022.

20. The Building is residential and has 59 legal units.

21. For years, Geoffroy lived in the Building, in an apartment whose floors are below street level but whose ceilings are above street level ("the basement apartment").

22. Upon information and belief, the New York City Certificate of Occupancy for the Building does not permit occupancy of the basement apartment where Geoffroy lived.

23. Upon information and belief, Defendant is aware that the Certificate of Occupancy for the Building does not permit occupancy of the basement apartment where Geoffroy lived, yet Defendant permitted Geoffroy to live there regardless.

24. Since approximately 2008, Geoffroy has resided principally in Queens. However, he continued to be permitted to use the basement apartment.

25. In exchange for providing the usual repair and maintenance services that residential superintendents provide, Defendant paid Geoffroy $14,400 per year.

26. While his hours varied day to day and week to week, Geoffroy typically spent an average of 40 hours a week completing his duties as superintendent. On occasion, he worked more than 40 hours a week completing those duties.

27. During his employment, Defendant paid Geoffroy bimonthly.

28. Each of Mr. Geoffroy's bimonthly paystubs reflect 86.67 hours of work.

29. Each of Mr. Geoffroy's bimonthly paystubs was for $600.00 (less withholdings).

30. None of Mr. Geoffroy's paystubs reflect any "allowances" pursuant to 12 NYCRR 141-2.1(a)(8). In other words, Defendant has never claimed that, due to the value of his utilities or rent, Mr. Geoffroy may be paid less than the minimum wage.

31. Defendant cannot claim that, due to the value of his utilities or rent, Mr. Geoffroy may be paid less than the minimum wage, because the basement apartment is not permitted to be occupied under the Building's Certificate of Occupancy.

32. In addition to serving as a super, Geoffroy was (until mid-2021) often called upon to assist with major repairs in the building, or with apartment renovation and painting.

33. The hours that Geoffroy spent working on major repairs were in addition to the hours he spent as a super.

34. Defendant compensated Geoffroy for his work on major repairs separately from his normal paycheck. Defendant reported the pay that Geoffroy received for his work on major repairs via a Form 1099.

35. Pursuant to 12 NYCRR 141-2.5(b), payments for work on major repairs may not be credited toward the minimum wage Mr. Geoffroy should have received as a super.

36. In addition to Geoffroy, the Building had a porter named Everaldo Gomez ("Gomez").

37. Gomez provided the services normally provided by a porter: sweeping and mopping common areas, taking out the trash for scheduled Sanitation pick-ups, sweeping the sidewalk and shoveling snow.

38. All of the services Gomez provided were for the benefit of Defendant and the building.

39. Defendant had ultimate control over Gomez's work, including through Geoffroy.

40. If Defendant had wanted to end Gomez's employment, it could have done so at any time, including by instructing Geoffroy to terminate Gomez.

41. Defendant was fully aware of Gomez's identity, was fully aware of the services that Gomez provided to Defendant and the Building, and was fully aware that Geoffroy controlled Gomez's work, and Defendant approved of the arrangement.

42. In sum, Gomez was Defendant's employee.

43. But Defendant never put Gomez directly on payroll. Rather, Defendant paid Geoffroy, and Geoffroy pay Gomez out of his own pocket. Defendant was aware of this arrangement, and approved of it.

44. For a period of time, Geoffroy had to pay Gomez $90 a week in cash for his services. Later, Geoffroy had to pay Gomez $400 twice a month in cash.

45. Defendant has never reimbursed Geoffroy for any of his expenses in paying wages to Gomez.

46. Geoffroy's expenses in paying Gomez on behalf of Defendant were between $4,600 and $9,600 a year at all times relevant to this Complaint.

*Wage Violations:*

47. At all times relevant to this Complaint, and as required by FLSA, the federal minimum wage has been $7.25 per hour.

48. At $7.25 per hour, an employee working 86.67 hours is owed wages of not less than $628.36.

49. During the three-year period prior to the filing of this Complaint, and in violation of the FLSA, Defendant consistently paid Geoffroy less than $628.36 for 86.67 hours of work as superintendent of the Building.

50. During the three-year period prior to the filing of this Complaint, Defendant did not reimburse Geoffroy for his expenses in paying Gomez, driving Geoffroy's net wages even further below the federal minimum wage.

51. At all times relevant to this Complaint, the New York City minimum wage for small businesses has exceeded the federal minimum wage, rising from $9 per hour in 2016 to $15 per hour by 2020.

52. During the six-year period prior to the filing of this Complaint, and in violation of the NYLL, Defendant always paid Geoffroy less than the New York City hourly minimum wage for his work as superintendent of the Building.

53. Under New York State law, resident and non-resident superintendents of residential buildings must be paid a minimum weekly wage based not on the number of hours worked, but upon the number of units in their buildings.

54. For example:  In 2021 in New York City, superintendents of residential buildings needed to be paid $10 per unit per week.  For a live-in superintendent of the Building, this would come to $590 per week in 2021, or $30,680 for the year.  In 2021, Defendant did not pay Geoffroy $30,680 for his work as the superintendent at the Building.

55. During the six-year period prior to the filing of this Complaint, and in violation of the NYLL, Defendant always paid Geoffroy less than the New York State per unit rate for his work as superintendent of the Building.

56. During the six-year period prior to the filing of this Complaint, Defendant did not reimburse Geoffroy for his expenses in paying Gomez, driving Geoffroy's net wages even further below the New York State minimum wage.

57. Geoffroy's position as a superintendent was non-exempt for purposes of FLSA and NYLL.  Geoffroy is entitled to overtime pay at a rate not less than 150% his usual rate of pay for hours worked in excess of 40 hours in a workweek.

58. Defendant made no effort to track or record Geoffroy's hours worked.

59. Geoffroy often worked in excess of 40 hours per week providing services as a superintendent at the Building. In other words, even without reference to his work doing major repairs (work for which he was paid separately, on a Form 1099), Geoffroy worked overtime for Defendant.

60. During the three-year and six-year period prior to the filing of this Complaint, Defendant did not pay Geoffroy any wages for overtime hours worked.

### *Retaliation:*

61. In approximately July 2021, Geoffroy took approximately one month of leave from his duties to attend to his mother, who was in poor health.

62. The leave was approved in advance by Defendant.

63. On his return, Geoffroy discovered certain changes in how Defendant operated the Building.

64. Howard Mandel ("Mandel"), an employee of Defendant who for years had been Geoffroy's immediate supervisor, told Geoffroy, "I don't think you can do this work anymore".

65. During Geoffroy's absence, Defendant had hired a man to serve as a temporary fill-in superintendent. After Geoffroy's return to work, the fill-in super continued to report to the Building every day, performing much of the work of a superintendent.

66. Also, Defendant ceased assigning Geoffroy any work on major repairs, or any other extra work.

67. However, the tenants in the building still called Geoffroy for assistance, and Geoffroy continued to help tenants.

68. Defendant continued to pay Geoffroy $600 bimonthly.

69. In effect, during his leave, although he was not taken off payroll, Geoffroy had been replaced as superintendent.

70. In January 2022, Geoffroy retained counsel with respect to Defendant's failure to pay wages.

71. On January 19, 2022, counsel for Geoffroy emailed a letter to Howard Mandel ("Mandel"), an employee of Defendant who for years had been Geoffroy's immediate supervisor, alleging violations by Defendant of the FLSA and NYLL with respect to Geoffroy.

72. Upon receipt of the letter, Mandel immediately telephoned Geoffroy asking "What have you done?"

73. Immediately after January 19, 2022, Defendant ceased paying Geoffroy wages.

74. Mandel informed Defendant's other employees, and counsel for Geoffroy, that Geoffroy had "retired."

75. This was false; Geoffroy had been terminated.

76. Upon information and belief, Defendant ceased paying Geoffroy wages and terminated Geoffroy because he had retained counsel and asserted his rights under the FLSA and NYLL.

## COUNT I
*Failure to pay wages and overtime wages under the FLSA.*

77. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

78. At all relevant times, Plaintiff was employed by Defendant within the meaning of the FLSA.

79. Defendant willfully violated Plaintiff's rights under FLSA including by not paying Plaintiff the federal minimum wage, and not paying Plaintiff overtime.

80. Defendant's failure to pay wages and overtime wages was willful within the meaning of FLSA.

81. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant his unpaid wages, unpaid overtime wages, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to FLSA.

## COUNT II
### *Retaliation under the FLSA*

82. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

83. At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA.

84. Plaintiff engaged in activity protected by FLSA, namely, in January 2022, through counsel, he objected to Defendant's failure to pay him his wages and overtime wages.

85. Defendant retaliated against Plaintiff for engaging in that protected activity; specifically, Defendant terminated Plaintiff because he objected to Defendant's failure to pay him his wages and overtime wages.

86. Due to Defendant's retaliation in violation of FLSA, Plaintiff is entitled to recover from Defendant compensatory damages for his lost wages and benefits, including front and back wages, as well as for his emotional distress, suffering, pain and humiliation, and damage to his reputation and career, as well as punitive damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to FLSA.

### COUNT III
*Failure to pay wages, and failure to reimburse business expenses, and Wage Notice and Wage Statement Violations, under New York Labor Law.*

87. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

88. At all relevant times, Plaintiff was employed by Defendant within the meaning of NYLL.

89. Defendant willfully violated Plaintiff's rights under NYLL including by:

    a. Not paying Plaintiff the minimum wage required to be paid.

    b. Not reimbursing Plaintiff for known, legitimate business expenses incurred by Plaintiff on behalf of Defendant.

    c. Not providing Plaintiff with the required Wage Notice or with accurate Wage Statements as required by NYLL § 195.

90. Defendant's failure to pay wages and failure to reimburse expenses was willful within the meaning of NYLL.

91. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant his unpaid wages, unreimbursed expenses, liquidated damages, statutory

penalties, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL.

## COUNT IV
### *Retaliation under New York Labor Law*

92. Plaintiff repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

93. At all relevant times, Defendant employed Plaintiff within the meaning of the NYLL.

94. Plaintiff engaged in activity protected by NYLL, namely, in January 2022, through counsel, he objected to Defendant's failure to pay him his wages and failure to reimburse his expenses.

95. Defendant retaliated against Plaintiff for engaging in that protected activity; specifically, Defendant terminated Plaintiff because Plaintiff objected to Defendant's failure to pay him wages and to reimburse his expenses.

96. Due to Defendant's retaliation in violation of NYLL, Plaintiff is entitled to recover from Defendant compensatory damages for his lost wages and benefits, including front and back wages, as well as for his emotional distress, suffering, pain and humiliation, and damage to his reputation and career, as well as punitive damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a) An award of compensatory damages equal to Plaintiff's unpaid wages and unpaid overtime wages due under the FLSA and NYLL;

(b) An award of liquidated damages, equal to 100% of Plaintiff's unpaid wages and unpaid overtime wages, and lost wages, as a result of Defendant's willful failure to comply with the FLSA and NYLL;

(c) An award of $5,000 to Plaintiff due to Defendant's violations of NYLL §195 (1), as provided for by NYLL § 198(1)-b; and an award of $5,000 to Plaintiff due to Defendant's violations of NYLL § 195 (3), as provided for by NYLL §198(1)-d;

(d) An award of compensatory and punitive damages, in an amount to be determined at trial, for retaliation under the FLSA and NYLL;

(e) Judgment for interest (including pre-judgment interest);

(f) Judgment awarding Plaintiff the costs of this action, together with reasonable attorneys' fees, as provided by the FLSA and NYLL; and

(g) Such other and further relief as to this Court appears necessary and proper.

## NOTICE OF PERSONAL LIABILITY
## TO THE MEMBERS OF 836 CROWN LLC

Pursuant to New York LLC Law § 609, Plaintiff hereby provides notice to the members of 836 Crown LLC that he intends to hold all members of that LLC who, at any point in time from March 2016 to the present, held any of the ten largest percentage ownership interests in that LLC personally liable, jointly and severally, for all debts, wages or salaries due and owing to him from March 2016 to the present.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through his undersigned counsel, hereby demands a jury trial on all causes of actions and claims for which he has a right to a jury trial.

Dated:	New York, New York
	August 5, 2022

> Respectfully Submitted,
>
> GRANOVSKY & SUNDARESH PLLC
>
> */s/ Benjamin Rudolph Delson*
> Benjamin Rudolph Delson (BD-1724)
> Alexander Granovsky (AG-6962)
> 48 Wall Street / New York, NY 10005
> delson@g-s-law.com / ag@g-s-law.com
> (646) 524-6001
>
> *Attorneys for Plaintiff Jerome Peter Geoffroy*

15